## Murray Iron Works Co. v. DeKalb Electric Co.

1. SALES—*Implied Warranty.*—The manufacturer of an article for a specific purpose impliedly warrants the quality of the material and the goodness of the workmanship.

Assumpsit, to recover price of defective boiler. Appeal from the Circuit Court of DeKalb County; the Hon. CHARLES A. BISHOP, Judge presiding. Heard in this court at the April term, 1902. Affirmed. Opinion filed July 18, 1902.

JONES & ROGERS, attorneys for appellant.

CARNES & DUNTON, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

. The Murray Iron Works, engaged in the manufacture of steam boilers at Burlington, Iowa, brought this suit against the DeKalb Electric Company to recover the price of a steam boiler, manufactured by plaintiff for defendant and delivered to defendant. The declaration contained a special count upon the contract, and the common counts. Defendant filed the general issue, with a notice that defendant would prove the boiler was bought for a certain purpose and was defective and unfit for said purpose, and that by reason thereof defendant had been greatly damaged and had expended much money and material in endeavoring to remedy said defects because thereof, and that there were latent defects in the workmanship upon said boiler not discoverable by inspection, etc. The total contract price, including certain extra patterns, was $1,005, less freight charges. Plaintiff recovered a verdict for $200. It moved

for a new trial. That motion was denied, and there was a judgment for plaintiff upon the verdict, from which judgment plaintiff appeals.

Plaintiff was the manufacturer of the boiler, and knew the use for which it was designed. There was an implied warranty that the boiler was of sound material and made in a workmanlike manner. (Beers v. Williams, 16 Ill. 69; Hallock v. Cutler, 71 Ill. App. 471.) There was proof by plaintiff tending to show that the boiler met the requirements of the contract. There was proof by defendant that there were latent defects in the workmanship which were not discovered upon inspection; that the rivets did not fill the holes, and when the boiler was put into actual use it became loose about the rivets and around the ends of the flues so that steam and water escaped; that then, when calked and tightened, it would run for a short time, but that in four to six days it would again leak so badly as to require to be put out of use and repaired; and that much effort was expended, by both plaintiff and defendant, to make it a useful boiler, but unsuccessfully, and it was valueless except for old iron. Plaintiff sought to show this condition was due to misuse of the boiler by defendant. There was much conflict in the evidence upon these questions, but the preponderance of the proof seems to have been with defendant, and we can not say the verdict should have been for plaintiff for the contract price. We would be better satisfied if the jury had awarded a somewhat larger sum, but do not feel warranted in disturbing the verdict on that account.

Plaintiff claims that the Hartford Steam Boiler Inspection and Insurance Company was an arbitrator between plaintiff and defendant, that it inspected and approved this boiler, and that, in the absence of fraud, that inspection bars defendant from the defense here set up. The main business of the Hartford Company is to inspect boilers to see if they are safe and fit for insurance; to insure boilers against explosion; and to inspect them after insurance to see that they are kept on a safe basis. Defendant desired its boiler to be insured. It obtained its specifications from

the Hartford Company, and sent them to plaintiff and asked for proposals to build such a boiler, and plaintiff made proposals, suggesting a modification. Defendant then wrote ordering a boiler made "in accordance with the Hartford drawings and specifications enclosed," saying, also, "We have to-day notified the Hartford people we have placed an order with you, and ask them to make such inspection as they see fit." This order was the contract. The closing part of the specifications reads as follows: "All the materials and workmanship to be subjected to the inspection and approval of the Hartford Steam Boiler Inspection and Insurance Company." When the boiler was completed the Hartford Company issued a certificate showing it had inspected the boiler, giving its dimensions and general description, and then stating "the same has been tested by hydrostatic pressure to the extent of 200 pounds per square inch, without developing any weakness or defects." On the same day it issued a policy of insurance on said boiler to plaintiff, and plaintiff assigned and mailed the policy to defendant. The Hartford Company did not in any other way or at any other time inspect the materials or workmanship of the boiler, and its approval thereof was only by said certificate and policy. We conclude the real meaning of the clause of the specifications above quoted is that the boiler was to be subject to the inspection and approval of the Hartford Company for purposes of insurance; and that it was not meant that the Hartford Company should act as an arbitrator. Certainly nothing in the contract warrants the claim that this single inspection by an agent of the Hartford Company was to relieve the manufacturer against liability for latent defects of workmanship, not discoverable by such inspection; and defendant based its defense upon such latent defects.

The rulings of the court upon the instructions conformed to this view of the case. We find no reversible error in rulings upon evidence. The judgment is affirmed.